Jack Taylor **RUUD**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 19512.

United States Court of Appeals
Ninth Circuit.

June 25, 1965.

Charles G. Stephenson, San Francisco, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Asst. Chief, Crim. Sec., Michael P. Balaban, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges, and MATHES, Senior District Judge.

MATHES, Senior District Judge:

This appeal is from judgment and sentence upon a jury verdict following trial under an indictment charging robbery of a national bank in violation of 18 U.S.C. § 2113(a).

Appellant asserts two errors. One is that the trial court erred in deny-

322

ing his motion under Rule 41(e) of the Federal Rules of Criminal Procedure, made during the trial, to suppress as evidence certain money in the form of bills which had been seized by an agent of the Federal Bureau of Investigation upon a search of appellant's motel room. It is contended here that both the search and the seizure were unreasonable within the meaning of the Fourth Amendment. The evidence, however, fully supports the District Judge's finding that appellant, following his arrest and while in custody, voluntarily and understandingly gave advance written consent to the search. Clearly then the search thereafter made, which resulted in discovery and seizure of the evidence in question was not unreasonable under the circumstances. [See: United States v. Mitchell, 322 U. S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944); United States v. Page, 302 F.2d 81 (9th Cir. 1962).]

The other error alleged is that the trial court improvidently denied appellant's motion for the appointment of a second psychiatrist to make an examination and testify as to appellant's mental condition. Consideration of this specification requires a brief review of certain facts disclosed by the record. The bank robbery is alleged to have occurred on January 17, 1964; appellant was indicted on January 29, 1964. He was arraigned before Judge Stephens on February 10th, at which time, at appellant's request, counsel was appointed and, at counsel's request, all further proceedings were continued for one week.

At the hearing on February 17th, appellant first offered a plea of guilty. Before Judge Stephens accepted that plea, appellant changed his mind and tendered a plea of not guilty, which plea was entered; and the cause was then transferred to the calendar of Judge Curtis for trial. With appellant's consent, the case was set for jury trial on February 25th. On February 18th, however, appellant appeared before Judge Curtis with his counsel and moved, under Rule 28 of the Federal Rules of Criminal Procedure, for the appointment of an expert

pursuant to 18 U.S.C. § 4244, to make a psychiatric examination of appellant and to report the results to Court and counsel. Judge Curtis granted the motion, appointed a psychiatrist, and continued the case, with appellant's consent, to March 9th for trial.

On February 28th, appellant again appeared with his counsel before Judge Curtis, this time for a hearing on the report of the appointed psychiatrist. At the conclusion of the hearing, the trial court found "that the defendant was sane at the time of the examination, that he is presently able to understand the proceedings against him, [and] that he would be able to properly assist his counsel in his own defense". [See 18 U.S.C. § 4244.] At appellant's request, the Court reserved any ruling "with respect to the sanity of the defendant at the time of the commission of the offense". The Court then, with appellant's consent, again continued the trial for one week, until March 17th.

At the February 28th hearing on the psychiatrist's report, appellant criticized the report as "inconclusive" and moved the appointment of a second psychiatrist, which motion was denied. On March 17th the case came on for jury trial before Judge Kilkenny of the District of Oregon, who was sitting by designation in the Southern District of California. Appellant then renewed his motion for appointment of a second psychiatrist, and Judge Kilkenny reserved ruling until he could hear the Government's evidence.

In the course of the Government's case-in-chief, the appointed psychiatrist was called as a witness by the prosecution at the request of the trial Judge, and testified, *inter alia:* that he was a licensed physician specializing in psychiatry, having been graduated in medicine in 1928; that he served his internship at a hospital operated by the Veteran's Administration, and was certified as a specialist in neuropsychiatry in 1932; that he entered private practice in 1934, has long served on the faculty of the schools of medicine of two universities, and was presently so employed; that in

1952 he became chairman of the Department of Psychiatry at Loma Linda University, and served as such for ten years; that he was then senior attending physician in the Psychiatric Division of the Los Angeles County Hospital, and a consultant in psychiatry on the staffs of five institutions in Los Angeles County; and that he had examined and treated hundreds of epileptics, including several during the year preceding the trial.

While testifying as to symptoms of epilepsy, the psychiatrist described the "fugue" which may follow a seizure as a period during which the victim, although able to perform all bodily functions, remains unconscious of his movements and is without awareness or memory of what happened during the fugue period, which ordinarily lasts only a few minutes, but may in an unusual case continue as long as fifteen minutes.

The psychiatrist further testified that in his opinion, based upon his examination, appellant was not in a fugue state at the time of the alleged bank robbery, but was conscious and aware of the nature and quality of his acts, which were then under control of the governing power of appellant's mind; and that appellant then knew and was conscious of the difference between right and wrong. On cross-examination, appellant's counsel inquired of the psychiatrist as to the nature and symptoms of psychomotor epilepsy; and the expert in reply described the symptoms as consisting of outward manifestations of severe anger accompanied or followed by loss of self control, but with no loss of consciousness. The witness further testified that appellant had said nothing to him about suffering from psychomotor epilepsy, and that nothing appellant had related as to his past history indicated any such condition as psychomotor epilepsy.

Called as a witness on his own behalf, appellant first testified that, during the night before the alleged offense, he had suffered an epileptic seizure. Appellant then proceeded to relate his version of the events of the following day, including what happened at the bank. As to the latter, appellant's testimony was not at material variance with that given by prosecution witnesses. Asked what was his condition while in the bank, appellant answered: " * * * I don't think I was absolutely myself even though I think I knew what I was doing. I was in a high state of emotion. I was desperate, and I was trying to accomplish something that I had never done in my life * * *."

On cross-examination, appellant was asked what factors he weighed in arriving at his decision to rob the bank, and he answered: "One of the factors is I don't have very long to live and I didn't care much about life; another is that I was in desperate need of money; I would like very much to put my boys through school and I wanted to continue on long enough to do that. I weighed the two against the other." Appellant further testified that he had thought for "several hours, three or four", in reaching his decision.

After hearing this evidence, Judge Kilkenny denied appellant's motion for appointment of a second psychiatrist, as had Judge Curtis. The matter was clearly within the sound discretion of the trial Court, and we hold that no abuse of that discretion appears from denial of appellant's motion under the circumstances of this case. [See U. S. ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953); cf. Bush v. McCollum, 231 F.Supp. 560 (N.D.Tex. 1964).]

In holding that the trial Court did not abuse its discretion by denying appellant's motion for appointment of a second psychiatrist, we inevitably share the wish of appellant's counsel that psychiatry could be a more exact science. Our reading of the record in this case convinces us nonetheless that examination of appellant by a second psychiatrist would not have aided the quest for certainty which we all seek in the elusive field of human intent or state of mind.

The issue as to appellant's sanity at the time of the alleged offense was sub-

mitted to the jury, and no complaint is here made as to the correctness and fairness of either the conduct of the trial or the instructions given to the jury; except that appellant does complain that the "burden of proving his insanity beyond a reasonable doubt" was cast upon him. Judge Kilkenny instructed the jury quite to the contrary: that the burden of proof of guilt beyond all reasonable doubt rested upon the prosecution; that the defendant never had the burden or duty of producing any evidence; and that if there was any reasonable doubt as to appellant's sanity from all the evidence in the case, the jury should acquit him.

Following the verdict of guilty, appellant was ordered committed pursuant to 18 U.S.C. § 4208(b), for examination and study of his mental and physical condition as provided in § 4208(c).

Our conclusion that the refusal to appoint a second psychiatrist was not an abuse of discretion is buttressed by the fact that, at the bar upon oral argument, we were informed that no evidence pointing to existence of a psychomotor epilepsy has developed, either during the extensive § 4208(c) study of appellant's mental and physical condition, or during his subsequent confinement in a Federal institution.

Appellant was fairly tried and fairly convicted, and his conviction and sentence must be affirmed.

During the proceedings in the trial court appellant was represented by David L. Gillette, Esquire, as his Court-appointed counsel; and upon this appeal appellant has been represented by Charles G. Stephenson, Esquire, pursuant to appointment by this Court. Both Mr. Stephenson and Mr. Gillette have served as advocates with zeal and ability, and in keeping with the high traditions of the legal profession.

Affirmed.